STATE OF NORTH CAROLINA v. CLIFFORD DEAN FREEMAN

No. 418A84

(Filed 4 June 1985)

### 1. Constitutional Law § 63; Criminal Law § 135.3— exclusion of jurors opposed to death penalty

North Carolina's jury selection process in first-degree murder cases is constitutional.

### 2. Criminal Law § 66.14— improper photographic identification—independent identification at trial

In a prosecution for first-degree murder, first-degree burglary, and felonious assault, the court did not err by denying defendant's motion to suppress identification testimony where there was no substantial evidence of impermissibly suggestive State action in the pretrial identification procedure and, although a friend of the victim had acted improperly by showing pictures of defendant to witnesses to boost their recollection of defendant, the witnesses had ample opportunity to observe the defendant in a well-lighted room under circumstances which were conducive to a high degree of attention on their part, furnished an accurate prior description of defendant, and demonstrated a high degree of certainty in the identification procedures which were held a very short time after the commission of the crimes. The trial court properly concluded that the witnesses' in-court identifications of defendant were of independent origin.

### 3. Criminal Law § 33— evidence found at motorcycle gang clubhouse—admissible

In a prosecution for first-degree murder, first-degree burglary, and felonious assault, the court did not err by admitting into evidence testimony and exhibits relating to defendant's association with the Southern Cross motorcycle club, shell casings found at the club, and testimony concerning the casings. The casings found at the clubhouse had markings similar to those found on the casings recovered from the murder site, defendant frequented the clubhouse, had threatened to kill the victim while at the clubhouse, and was identified as the killer. Testimony concerning defendant's presence at the clubhouse, a photograph of the clubhouse, and a description of defendant as a "sort of biker-looking fellow" were also properly admitted, and there was no prejudicial error in light of the overwhelming evidence against defendant from the admission of evidence of defendant's membership in the Southern Cross or testimony describing it as a motorcycle gang.

### 4. Burglary and Unlawful Breakings § 5.5— kicking in interior door—evidence of burglary sufficient

The evidence was sufficient to support the submission of burglary to the jury and to support a verdict of guilty where there was plenary evidence that defendant kicked open a bedroom door in the night with the intention to commit the felony of murder. The breaking of and entry through an inner door is sufficient so long as the other elements are present.

**5. Homicide § 30— second-degree murder not submitted to jury—no error**

There was no error in the court's failure to instruct the jury on second-degree murder where the State put on evidence that the night before the murder defendant had said he would kill the victim; that defendant broke into the bedroom of the victim's house the night of the murder, ordered those present into a corner, and announced that this was their "last gig"; and that defendant shot the victim in the head immediately after he identified himself at defendant's order. A rational jury considering this evidence could only conclude that defendant was guilty of first-degree murder or that he was not the killer and was not guilty.

**6. Criminal Law § 138— court's refusal to find mitigating factor—prior contrary jury finding in capital phase—no error**

In a prosecution for first-degree murder, first-degree burglary, and felonious assault, the trial court did not err by failing to find the mitigating factor of good character or good reputation where the jury had found during the sentencing phase of the capital charge that defendant had led a law-abiding life for a substantial period of time before the murder and had a reputation for good character. When a trial judge makes his findings of aggravating and mitigating factors in the sentencing phase of crimes coming within the Fair Sentencing Act, he is not bound by the findings of a jury during the sentencing phase of a capital case that certain mitigating factors exist, especially when the mitigating factors are not supported by uncontradicted evidence. G.S. 15A-1340.4(a)(2)(m).

**7. Criminal Law § 138— one aggravating factor—no mitigating factors—failure of court to weigh—maximum sentence—no error**

The trial court did not abuse its discretion in sentencing defendant to the maximum terms for first-degree burglary and two counts of felonious assault without weighing aggravating and mitigating factors where there was one aggravating factor and no mitigating factors. The command in G.S. 15A-1340.4(b) to weigh the factors presupposes that there are aggravating and mitigating factors; moreover, once the trial judge determines that the aggravating factors outweigh the mitigating factors, the extent by which this sentence exceeds the presumptive sentence is within his discretion.

APPEAL by defendant from the judgment entered by *Ferrell,* *J.,* at the 6 February 1984 Criminal Session of MECKLENBURG County Superior Court. Heard in the Supreme Court 12 March 1985.

Defendant was convicted of first-degree murder, first-degree burglary, assault with a deadly weapon with intent to kill inflicting serious injury, and assault with a deadly weapon with intent to kill. Following the sentencing phase of the trial, the jury recommended life imprisonment for the murder conviction. Defendant received two sentences of life imprisonment, one sentence

of twenty years and one sentence of ten years, the sentences to run consecutively.

John Hefferon, Kenn Firman, Dale Alderman and David Alderman were practicing music in a bedroom of John Hefferon's residence on the evening of 21 September 1983. Sometime after 9:00 p.m. defendant kicked open the door of the room. He was holding a pistol with both hands. Defendant stood there for approximately five seconds pointing his pistol at the group. He then said, "This is your last gig" and ordered the band members to get against the wall. At this point defendant asked which one was Johnny Hefferon and Hefferon identified himself. Defendant then shot Hefferon in the head at a range of approximately three feet. Hefferon died as a result of the head wound.

Having shot Hefferon, defendant pointed the pistol at Dale Alderman and attempted to shoot him despite his pleas for mercy. The pistol failed to function and defendant removed the magazine and jammed it back into the gun. He then shot Alderman in the head, seriously wounding him. Defendant next attempted to shoot Kenn Firman, but his pistol again malfunctioned and Firman fled from the house. Defendant followed him, pistol whipped him and shot him in the back. Defendant reentered the house and shouted "who's next" before leaving.

John Hefferon had been dating Joanne Norwood who had previously lived with defendant. On the night before the killing, defendant had told Ms. Norwood that he would kill Hefferon. Two .45 caliber shell casings were found at the murder scene, and twenty-three shell casings of the same caliber were found at the clubhouse of the Southern Cross, a motorcycle club. The State's expert witness Roger Thompson testified that after examining the markings found on the shell casings it was his opinion that all of them had been fired from the same gun. Defendant had been known to frequent the Southern Cross clubhouse.

All of the witnesses present at the murder scene identified defendant as the killer.

Within a few days of the murder, Kenn Firman and David Alderman were shown photographic displays, each of which contained a photograph of defendant. Dale Alderman viewed a similar photographic display on 11 October 1983 after he was released

from the hospital. Each of them identified defendant as the killer without hesitation. Later, all three separately identified defendant from a physical lineup.

    *Lacy H. Thornburg, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State.*

    *Tucker, Hicks, Sentelle, Moon and Hodge, P.A., by David B. Sentelle and James L. Bagwell, for the defendant.*

    BRANCH, Chief Justice.

[1]  Defendant contends that he was tried by a "death-qualified jury" and was thereby deprived of his constitutional rights to a jury drawn from a cross-section of the community, to equal protection of the law and to an impartial trial. We have repeatedly held that North Carolina's jury selection process in first-degree murder cases is constitutional. *State v. Vereen,* 312 N.C. 499, 324 S.E. 2d 250 (1985); *State v. Noland,* 312 N.C. 1, 320 S.E. 2d 642 (1984), *cert. denied,* --- U.S. ---, 105 S.Ct. 1232 (1985). This contention is without merit.

I.

[2]  Defendant assigns as error the trial court's denial of his motion to suppress the identification testimony of witnesses Kenn Firman, David Alderman and Dale Alderman. He argues that the photographic identification procedures were so impermissibly suggestive that the in-court identifications were tainted and therefore inadmissible. Defendant contends that he was heavier than the other persons depicted in the photographic lineup and that the eyewitnesses who identified him had been shown photographs of defendant under uncontrolled circumstances.

    Pursuant to defendant's motion to suppress and prior to jury selection, Judge Ferrell conducted a voir dire hearing as to the admissibility of the identification testimony. On voir dire David Alderman testified that the photographic display pictured men who were not as heavy as defendant. However, the witness Dale Alderman testified that he was not sure that this display depicted persons who were a great deal thinner than defendant. Officer VanHoy testified that all the men in the display were of similar build, that he had instructed the witnesses who observed the photographic display to concentrate on facial features and ignore

size, hair, etc. The witness Firman saw ten or more photographs of defendant prior to identifying him in a physical lineup. The photographs were furnished to him by Joanne Norwood for the purpose of making certain that he could identify defendant as the killer. David and Dale Alderman saw some of the photographs after they had identified defendant in photographic displays and in physical lineups and about a week before their in-court identifications were made.

The State offered evidence tending to show that the murder of John Hefferon and the shooting of Dale Alderman occurred in a well-lighted room. The eyewitnesses who testified in court observed defendant when he herded them into a corner and fatally shot Hefferon from a range of about three feet. Both Dale Alderman and Kenn Firman observed defendant as he leveled the pistol at each of them, adjusted the pistol when it malfunctioned and then proceeded with his deadly assault. These witnesses gave police accurate descriptions of their assailant and made very certain identifications in the photographic displays, the lineup and at trial. At trial the witnesses testified that their identifications were based solely on what they saw on the night of 21 September 1983.

At the conclusion of the hearing the trial judge found facts consistent with the above-recited evidence and *inter alia* concluded and ruled:

1. There was ample opportunity of the witnesses to observe the defendant on September 21, 1983.

4. The in-court identification[s] of the defendants [sic] by the witnesses are of independent origin, based solely upon what the witnesses saw at the time of the crimes charged and do not result from any out-of-court confrontation or from any photograph or from any pretrial identification procedures suggestive or conducive to mistaken identification. EXCEPTION NO. 28

5. Any confrontation was not so unnecessarily suggestive or conducive to lead to irreparable mistaken identification to the extent that the defendant would be denied due process of law. EXCEPTION NO. 29

6. No constitutional right of the defendant was violated. EXCEPTION NO. 30

It is therefore ORDERED that the evidence of the confrontation and subsequent identification of the defendant by the witnesses Kenn Firman, Dale Alderman and David Alderman is competent evidence in the trial of this case.

The Motions to Suppress, and each of them, are DENIED. EXCEPTION No. 31

When a motion to suppress identification testimony is made, the trial judge must conduct a voir dire hearing and make findings of fact to support his conclusion of law and ruling as to the admissibility of the evidence. When the facts found are supported by competent evidence, they are binding on the appellate courts. *State v. Woods*, 286 N.C. 612, 213 S.E. 2d 214 (1975).

"Identification procedures which are so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification violate a defendant's right to due process." *State v. Grimes*, 309 N.C. 606, 609, 308 S.E. 2d 293, 294 (1983). The proper test is whether in the totality of the circumstances a procedure is so unnecessarily suggestive and conducive to irreparable misidentification that it offends fundamental standards of decency and justice. *Id.* If an identification procedure is not impermissibly suggestive, the inquiry is ended. *State v. Leggett*, 305 N.C. 213, 220, 287 S.E. 2d 832, 837 (1982). If the procedure is impermissibly suggestive, then it is necessary to determine whether "all the circumstances indicate that the procedure resulted in a very substantial likelihood of irreparable misidentification." *Grimes*, 309 N.C. at 609, 308 S.E. 2d at 294. A determination by the trial judge that the identification testimony was of independent origin must be supported by clear and convincing evidence. *State v. Yancey*, 291 N.C. 656, 231 S.E. 2d 637 (1977). Factors to be considered include:

(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Grimes*, 309 N.C. at 609-10, 308 S.E. 2d at 294-95.

A photographic lineup is not impermissibly suggestive mere-ly because defendant has a distinctive appearance. "All that is required is that the lineup be a fair one and that the officers con-ducting it do nothing to induce the witness to select one picture rather than another." *Grimes*, 309 N.C. at 610, 308 S.E. 2d at 295. The photographic displays in this case clearly meet this standard.

In instant case we find no substantial evidence of State ac-tion in the pretrial identification procedure which was imper-missibly suggestive. However, the action of Joanne Norwood in showing pictures of defendant to the witnesses Kenn Firman, David Alderman and Dale Alderman to bolster their recollection of defendant was improper. We note that there is some authority which intimates that impermissibly suggestive pretrial identifica-tion procedures not resulting from State action do not taint in-court identification testimony. *United States v. Davis*, 407 F. 2d 846 (1969); *State v. Haskins*, 278 N.C. 52, 178 S.E. 2d 610 (1971). Here, we need not decide whether the improper display of the photographs to the State's witnesses by one other than the State tainted their in-court identifications. This is so because the trial judge concluded that the witnesses' in-court identifications of defendant were of "independent origin, based solely upon what the witnesses saw at the time of the crime." This conclusion was supported by clear and convincing evidence.

The witnesses had ample opportunity to observe the defend-ant in a well-lighted room under circumstances which certainly were conducive to a high degree of attention on their part. The witnesses furnished an accurate prior description of defendant and demonstrated a high degree of certainty in the identification procedures which procedures were held a very short time after the commission of the crimes.

We hold that the trial court correctly denied defendant's mo-tion to suppress the identification testimony.

## II.

[3] Defendant next assigns as error the admission by the trial court into evidence of certain testimony and exhibits relating to defendant's association with the Southern Cross motorcycle club on the basis that this evidence was irrelevant and unfairly preju-dicial. Defendant also assigns as error the admission into evidence

of shell casings found at the Southern Cross clubhouse and testimony concerning those shell casings.

We will not consider the rules set forth in Chapter 8C, The North Carolina Evidence Code, since the trial of this case was completed prior to its effective date, 1 July 1984.

Our rule has long been that "evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue." 1 *Brandis on North Carolina Evidence* § 77 (1982). "[I]n a criminal case, every circumstance which is reasonably calculated to throw light upon the alleged crime is admissible." *State v. Price*, 301 N.C. 437, 452, 272 S.E. 2d 103, 113-14 (1980).

Defendant argues that the fact that he had previously visited the clubhouse and that his car was found there is too tenuous to establish a link between him, the shell casings and the crime. Defendant points out that no gun was found at the clubhouse, that three men—not including himself—lived there, that ten or more men were frequent visitors to the clubhouse and that his fingerprints were not found on the shell casings nor on the box in which the casings were found.

Even though the shell casings found at the murder site had markings similar to the markings on the casings found at the clubhouse, defendant argues that this is insufficient to connect the murder weapon with the clubhouse or to show that he used the murder weapon because he visited the clubhouse. Defendant relies on the case of *State v. Needham*, 235 N.C. 555, 71 S.E. 2d 29 (1952) for support. In that case the defendant was convicted of killing another man by burning his house. At trial the State introduced testimony that oil had been found in the well of one of the victim's prior residences and burned chips and paper under the kitchen safe in another residence. There was also evidence that defendant had frequently visited the victim. In reversing the trial court this Court held there was no evidence to connect the defendant to these events and that in the absence of such proof the evidence was inadmissible. *Needham*, 235 N.C. at 567, 71 S.E. 2d at 38. Defendant contends that the evidence in the case at bar is similarly unconnected to him and is inadequate to support anything other than conjecture. We disagree.

Although there are some similarities between *Needham* and this case, the differences make *Needham* clearly distinguishable. The shell casings found at the Southern Cross clubhouse had markings similar to the markings found on the casings recovered from the murder site. This similarity tends to show that the casings came from the same weapon. The fact that defendant frequented the clubhouse, was identified as the killer and had threatened to kill John Hefferon while at the clubhouse is sufficient to link the shell casings found at the clubhouse to defendant and the murder weapon. These facts are to be distinguished from *Needham* in which the burnt chips and oil could not be linked directly to the crime or the accused. Defendant's evidence tending to show that other persons *might* have put the shell casings at the clubhouse merely goes to the weight of the evidence rather than its admissibility.

The shell casings in State's Exhibit No. 25 and the testimony relating to them clearly have a logical tendency to prove a fact in issue and so were properly admitted. *See* 1 *Brandis on North Carolina Evidence* § 77 (1982); *Price*, 301 N.C. at 452, 272 S.E. 2d at 113-14. Therefore, the trial court properly admitted the portion of Joanne Norwood's statement that referred to the clubhouse and defendant's presence there with her on several occasions. For the same reason, admission of the photograph of the clubhouse was not error. While it may not have been particularly useful in linking defendant to the clubhouse, it was not prejudicial. Likewise, we find that Dale Alderman's testimony that defendant was "sort of a biker-looking fellow" was properly admitted. That testimony came in response to a question as to how defendant looked on the night of the murder. All of this evidence was relevant and was properly admitted.

In addition to challenging the relevance of this evidence defendant contends that its probative value is outweighed by unfair prejudice. Defendant rightly points out that the public views organizations like the Southern Cross and "bikers" in general with distaste and fear. However, defendant misconstrues the rule of *State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561 (1971) (error to admit portion of the defendant's confession referring to his relationship with members of the Black Panthers), when he contends that it requires the exclusion of evidence linking him to the Southern Cross. In *Lynch* there was no link between the Black Panthers

and the arson the defendant was charged with. The Court noted that this evidence was irrelevant to the issue of the defendant's guilt and should have been excluded. *Lynch*, 279 N.C. at 18, 181 S.E. 2d at 572. We have already held that evidence of defendant's membership in the Southern Cross was relevant and now hold that defendant was not unfairly prejudiced by its admission.

The same cannot be said for the testimony elicited from Joanne Norwood that the Southern Cross is a "motorcycle gang." This evidence is irrelevant to the issue of defendant's guilt and its admission was error. We do not consider the State's argument that this evidence was admissible to rebut the testimony of defendant's character witnesses because this testimony came out during the State's case-in-chief before defendant had put his character in issue. *State v. Sanders*, 295 N.C. 361, 373, 245 S.E. 2d 674, 683 (1978).

Although admission of this evidence was error, we hold that this error does not entitle defendant to a new trial. Defendant has the burden not only of showing error but that the error was prejudicial. *State v. Milby*, 302 N.C. 137, 142, 273 S.E. 2d 716, 720 (1981). A defendant must further show that but for the error it is likely that a different result would have been reached. *State v. Loren*, 302 N.C. 607, 613, 276 S.E. 2d 365, 369 (1981). In light of the overwhelming evidence of defendant's guilt we cannot see how admission of this evidence could possibly have influenced the outcome of the trial. This assignment of error is overruled.

### III.

[4] We next turn to defendant's argument that the trial court erred in failing to dismiss the charge of first-degree burglary and in failing to set aside the verdict of guilty of first-degree burglary because the evidence was insufficient to support the charge or the verdict. After examining the record we hold that the evidence supported submission of the charge to the jury and the verdict of guilty.

Burglary "consists of the felonious breaking and entering of the dwelling house or sleeping apartment of another in the night-time with the intent to commit a felony therein, whether such intent be executed or not." *State v. Beaver*, 291 N.C. 137, 141, 229 S.E. 2d 179, 181 (1976). If a defendant enters through an open

door or window, he is not guilty of burglary. *State v. Boon*, 35 N.C. 244, 246 (1852). A motion to dismiss a charge for insufficiency of the evidence should be denied if there is "substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E. 2d 649, 651-52 (1982).

Defendant's sole challenge to his indictment and conviction of first-degree burglary is his argument that the State failed to produce evidence of a breaking. Defendant relies on the fact that the State did not put on any evidence to show that the doors and windows of the Hefferon residence were closed at the time he entered.

Defendant's argument that no breaking of the outer doors or windows was proven is attractive but ignores the fact that he kicked open the door of the room where John Hefferon, Kenn Firman, Dale Alderman and David Alderman were practicing prior to entering the room and killing Hefferon. In order to establish the breaking and entering element of burglary our law only requires a "breaking, removing or putting aside of something constituting a part of the dwelling house and relied upon as security against intrusion." *Boon*, 35 N.C. at 244. The breaking of and entry through an inner door is sufficient to meet this requirement so long as the other elements of burglary are present. 13 Am. Jur. 2d, *Burglary*, § 21 (1964). There was plenary evidence in this case to support a finding that defendant entered the bedroom of the Hefferon residence by a breaking of the door in the night and with the intention to commit the felony of murder. The trial court properly denied defendant's motion to dismiss.

A motion to set aside the verdict as being against the greater weight of the evidence is addressed to the discretion of the trial court and is not reviewable absent an abuse of discretion. *State v. Boykin*, 298 N.C. 687, 259 S.E. 2d 883 (1979), *cert. denied*, 446 U.S. 911 (1980). This assignment of error is merely formal and is overruled.

IV.

[5] Defendant assigns as error the trial court's failure to instruct the jury on second-degree murder. Defendant contends that the

evidence warranted such an instruction. This assignment of error is without merit.

When the State has fully met its burden of proving each and every element of the offense of first-degree murder, the trial judge need not instruct the jury on second-degree murder when: (1) all the evidence put before the jury by the State "belies anything other than a premeditated and deliberate killing," and (2) defendant has put on no evidence to negate premeditation and deliberation other than his denial that he killed the victim. *State v. Strickland*, 307 N.C. 274, 293, 298 S.E. 2d 645, 657-58 (1983). In such a case the only possible verdict is guilty of first-degree murder or not guilty.

In the case at bar the State put on evidence that (1) on the night before the murder defendant said that he would kill John Hefferon; (2) on the night of the murder defendant broke into the bedroom of Hefferon's house, ordered those present into a corner and announced that this was their "last gig"; and (3) when Hefferon identified himself at defendant's order, defendant immediately shot him in the head. Defendant did not dispute these facts other than to deny that he was the killer. A rational jury considering this evidence could only conclude that defendant was guilty of first-degree murder or that he was not the killer and was not guilty. Therefore, under the rule of *Strickland*, the trial judge properly refrained from instructing the jury on the elements of second-degree murder.

Defendant next requests that the Court reconsider *Strickland*. Defendant has cited no new authority or reasoning to support a reconsideration of *Strickland* and we decline to do so.

## V.

Defendant's remaining assignments of error concern the sentencing phase of the trial.

[6] First, defendant argues that at the sentencing hearing for the burglary charge and the charges of assault with a deadly weapon with intent to kill the trial court erred in failing to find the mitigating factor set out in N.C.G.S. § 15A-1340.4(a)(2)(m) that defendant is a person of good character or has a good reputation in the community where he lives. In the sentencing phase of the capital charge, the jury found as a mitigating factor that defend-

ant had led a law-abiding life for a substantial period of time before the murder of Mr. Hefferon and had a reputation for good character. Defendant argues that since the jury had already found defendant to have a reputation for good character, it was error for the trial court to fail to find this factor. Defendant also argues that the evidence for this factor is uncontradicted and manifestly credible.

When evidence supporting a mitigating factor is uncontradicted, substantial and manifestly credible, the sentencing judge may not simply ignore it. *State v. Jones*, 309 N.C. 214, 218-19, 306 S.E. 2d 451, 454 (1983). However, it is not error for a sentencing judge to fail to find a mitigating factor if uncontradicted, substantial and manifestly credible evidence is simply not probative of the mitigating factor sought to be established. *State v. Blackwelder*, 309 N.C. 410, 419, 306 S.E. 2d 783, 789 (1983).

When a defendant argues that his evidence is sufficient to compel the finding of a mitigating factor, he bears the same burden of persuasion of a party seeking a directed verdict. *Jones*, 309 N.C. at 219, 306 S.E. 2d at 455. He must demonstrate that " 'the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn,' and that the credibility of the evidence 'is manifest as a matter of law.' " *Id.* at 219-20, 306 S.E. 2d at 455 (quoting *North Carolina National Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979) ). Defendant clearly has failed to do that in this case. He had been convicted of trespassing, assault and resisting arrest four years earlier and possession of alcoholic beverages by a minor seven years earlier. While defendant did put on a number of character witnesses who testified that he was not violent, was well liked and did not get into trouble, these witnesses were either relatives, close friends or persons who had little knowledge of defendant's general character and reputation in the community. When defendant's prior convictions are considered, this evidence does not rise to the level of being uncontradicted, substantial and manifestly credible. Good character, as the term is used in the Fair Sentencing Act, means something more than the mere absence of bad character. *State v. Benbow*, 309 N.C. 538, 548, 308 S.E. 2d 647, 653 (1983). To merit the reputation for good character a person must conduct himself as a person of upright character ordinarily would, should or does.

*Id.* After examining the evidence offered by defendant and the State, we cannot say that the trial judge erred when he concluded that this evidence was insufficient to establish that defendant had a good reputation in the community in which he lives. To the extent that defendant intended that the evidence that he had led a law-abiding life for a considerable period of time prior to his present conviction be considered as a separate non-statutory mitigating factor, we reach the same conclusion. The trial judge justifiably concluded that four years without a conviction does not amount to leading a law-abiding life for a substantial period of time.

Defendant argues that the trial judge was bound by the jury's finding in the sentencing phase of the capital charge that defendant had a reputation for good character in the community in which he lived and had led a law-abiding life for a considerable period of time prior to his present conviction. We hold that when a trial judge makes his findings of aggravating and mitigating factors in the sentencing phase of crimes coming within the Fair Sentencing Act, he is not bound by the findings of a jury during the sentencing phase of a capital case that certain mitigating factors exist. This is especially true when the mitigating factors in question are not supported by uncontradicted evidence.

[7] Lastly, defendant contends that the trial judge abused his discretion by imposing consecutive maximum sentences for the convictions of first-degree burglary, assault with a deadly weapon with intent to kill causing serious injury and assault with a deadly weapon with intent to kill. We disagree.

When imposing a sentence that is greater or lesser than the presumptive term, the trial judge "must specifically list in the record each matter in aggravation or mitigation that he finds proved by a preponderance of the evidence." N.C. Gen. Stat. § 15A-1340.4(b) (1983). If a prison term in excess of the presumptive is imposed, the trial judge must conclude that the factors in aggravation outweigh the factors in mitigation. *Id.* The weighing of the factors in aggravation and mitigation that have been found is within the sound discretion of the trial judge. *State v. Ahearn,* 307 N.C. 584, 597, 300 S.E. 2d 689, 697 (1983). "The number of factors found is only one consideration in determining which factors outweigh others." *State v. Davis,* 58 N.C. App. 330, 333, 293 S.E.

2d 658, 661 (1982), *quoted in Ahearn*, 307 N.C. at 597, 300 S.E. 2d at 697.

Defendant contends that he is entitled to a new sentencing hearing because the trial judge did not make a finding that the aggravating factors outweighed the mitigating factors as required by N.C.G.S. § 15A-1340.4(b). While conceding that no mitigating factors were found, defendant contends that the prohibition in *Ahearn* on using the relative numbers of factors found to determine their weight compels the judge to weigh the factor found and make a finding. Defendant argues that had such a finding been made, the aggravating factor of prior convictions would have been given little weight and so would not have justified the maximum sentences given.

The command in N.C.G.S. § 15A-1340.4(b) to weigh the factors presupposes that there are aggravating and mitigating factors for the trial court to weigh against each other. When only aggravating factors have been found, it would be an exercise in futility to require the trial judge to make a specific finding that those factors outweigh nonexistent mitigating factors. Defendant misconstrues the purpose of the balancing required by N.C.G.S. § 15A-1340.4(b) when he suggests that it could have resulted in a finding that would have compelled a lesser sentence. The only purpose of this balancing is to determine which factors have the greater weight. Since there were no mitigating factors to balance against the aggravating factor found, defendant can only attack his sentences on the basis that the trial judge abused his discretion. We now consider that issue.

Once the trial judge determines that the aggravating factors outweigh the mitigating factors, the extent by which the sentence exceeds the presumptive sentence is within his discretion so long as it does not exceed the maximum punishment set by the legislature. *Ahearn*, 307 N.C. at 598, 300 S.E. 2d at 698. Likewise, the Fair Sentencing Act has not taken away the trial judge's discretion to impose either consecutive or concurrent sentences. *State v. Ysaguire*, 309 N.C. 780, 785, 309 S.E. 2d 436, 440 (1983). The trial judge properly found a factor in aggravation, and we cannot say that he abused his discretion by giving the defendant the maximum sentence allowed by statute for each offense. Having been convicted of murder and other crimes of violence carried out

in a cruel and pitiless manner, defendant cannot now argue that his sentences are excessive or disproportionate.

Defendant received a fair trial free from prejudicial error.

No error.