STATE OF NORTH CAROLINA v. TERRY ANTHONY RUFF

No. COA96-1510

(Filed 4 November 1997)

**1. Criminal Law § 1095 (NCI4th Rev.)— kidnapping and rape—aggravating factor—premeditation and deliberation—random victim**

The trial court did not err when sentencing defendant for second-degree kidnapping and first-degree rape by finding as an aggravating factor that defendant kidnapped and raped the victim after a period of premeditation and deliberation where there was enough evidence for the trial court to find that defendant committed those offenses in a cool and calculated manner. A reason-

able inference could be drawn from defendant's actions and words that he had previously contemplated kidnapping and raping someone, even in the absence of prior contact or ill will between defendant and the victim.

**2. Criminal Law § 1097 (NCI4th Rev.)— kidnapping and rape—mitigating factor—good character and reputation**

The trial court did not err when sentencing defendant for second-degree kidnapping and first-degree rape by not finding as a mitigating factor that defendant was a person of good character and reputation in his community where defendant had a prior conviction (assault with a deadly weapon); all but three of his ten character witnesses were either relatives or close friends; many of the witnesses who testified to his good character lived in different towns from defendant, making their knowledge of his general character and reputation suspect; and these witnesses testified to defendant's lack of bad character and his good work habits more than to his good character and reputation in the community. The evidence brought forth by defendant cannot be said to so clearly establish defendant's good character and reputation that no reasonable inferences to the contrary can be drawn.

**3. Criminal Law § 1097 (NCI4th Rev.)— kidnapping and rape—mitigating factor—mental defect**

The trial court did not err when sentencing defendant for second-degree kidnapping and first-degree rape by not finding the mitigating factor that brain surgery and the need to take seizure-preventing medication were mental conditions which mitigated his culpability. Defendant failed to carry his burden of showing by a preponderance of the evidence the existence of the mental defect and its effects upon his conduct in that the only evidence came from defendant, his wife, and the sister of her ex-husband; there was no medical or expert testimony; and there was no evidence that either the surgery or the medication had a significant effect (or any effect) on his actions at the time of the crime. N.C.G.S. § 15A-1340.16(e)(3).

**4. Criminal Law § 1096 (NCI4th Rev.)— kidnapping and rape—Structured Sentencing—firearms enhancement— element of joined offense**

The trial court erred when sentencing defendant for second-degree kidnapping by adding a 60-month firearms enhancement

STATE v. RUFF

[127 N.C. App. 575 (1997)]

where defendant was convicted of first-degree rape based upon his use of a dangerous weapon, convicted of first-degree kidnapping based upon the commission of a sexual assault, and the trial court arrested judgment on the first-degree kidnapping, sentenced defendant for second-degree kidnapping, and increased that sentence under the firearms enhancement statute. Under *State v. Westmoreland*, 314 N.C. 442 (1985), a trial court cannot aggravate a sentence with acts which form the gravamen of contemporaneous convictions of joined offenses. The State relied only upon evidence showing that the forcible rape occurred with the aid of a dangerous weapon to establish first-degree rape; use of a firearm, therefore, was a "gravamen" of defendant's first-degree rape conviction. N.C.G.S. § 15A-1340.16A.

Appeal by defendant from judgment entered 20 February 1996 by Judge Donald R. Huffman in Cleveland County Superior Court. Heard in the Court of Appeals 16 September 1997.

*Michael F. Easley, Attorney General, by Laura E. Crumpler, Assistant Attorney General, for the State.*

*Brenda S. McLain, for defendant-appellant.*

WYNN, Judge.

In this appeal, the defendant contests only the sentencing phase of his trial. He contends that trial court erred in: (1) finding as an aggravating factor that the offenses he committed were done with premeditation and deliberation; (2) failing to find as a mitigating factor that he was a person of good character and reputation in his community; (3) failing to find as a mitigating factor that he was suffering from a mental condition that significantly reduced his culpability for the offenses committed; and (4) applying North Carolina's Firearm Enhancement Statute to aggravate his second-degree kidnapping conviction. We find that (1) there was substantial evidence that the offense was committed with premeditation and deliberation; (2) defendant failed to present uncontradicted, substantial and inherently credible evidence that would warrant the finding of the mitigating factors he requested; and (3) the imposition of the firearm enhancement statute in the case is prohibited by our Supreme Court's case of *State v. Westmoreland*.[1] Accordingly, we vacate only that part of the defendant's sentence that was enhanced under the firearm enhancement statute.

STATE v. RUFF

[127 N.C. App. 575 (1997)]

## FACTS

At the 12 February 1996 criminal session of the Superior Court of Cleveland County, defendant was tried and convicted of first-degree kidnapping and first-degree rape. Judgment on defendant's first-degree kidnapping conviction was arrested and instead, defendant was sentenced for the offense of second-degree kidnapping. Defendant received the following sentences: For the Class E felony of second-degree kidnapping—a minimum sentence of 32 months and a maximum sentence of 60 months, which was then enhanced under the firearm enhancement statute[2] by 60 months for the use of a firearm in the commission of the offenses; and for the Class B1 felony of first-degree rape—a consecutive minimum term of 320 months and a maximum term of 393 months. We affirm all of sentences awarded by the trial court except for the 60 months added under the firearm enhancement statute.

Although additional facts of this case are not particularly relevant to our discussion of defendant's last assignment of error, they are significant for purposes of our discussion regarding the other three assignments raised by defendant. As such, we briefly summarize below the facts presented by the state and accepted by the jury at defendant's trial. We omit the name of the female in this case because of our concern for the female's privacy and because there is no issue of her identity in this case.

At 12:30 p.m. on 13 June 1995, a female accountant and bookkeeper at Lutz Oil Company in Shelby, North Carolina, arrived at the company's Kings Mountain office after having been asked by the company's president to fill in for another worker. A few minutes after she arrived at the office, the female went to the office bathroom to do some cleaning. While cleaning, she heard the side door of the office open; so, she left the bathroom and went to the front counter to attend to, what she believed, was a customer. The customer, later identified as defendant, asked her for some cigarettes. She reached for the cigarettes and when she turned around, defendant was pointing a gun at her face. Defendant then told her to be quiet, that he wanted her to cooperate with him, and that if she tried to run or scream he would kill her.

Poking his gun in her side, defendant then escorted her out the door and into his pickup truck. At some point, they arrived at Stoney

1. 314 N.C. 442, 334 S.E.2d 223 (1985).

2. N.C. Gen. Stat. § 15A-1340.16A (1994).

Point Road where the defendant shoved the female out of his truck and, with the gun at her back, led her to a nearby field. After walking a short distance in the field, defendant then stopped her and took off her pantyhose. Because he felt they could be seen there from the road, however, he continued to lead her further down the field. When they finally stopped again, defendant removed her shirt and told her to remove her skirt and bra. He then removed her underpants, his own clothes, and then told her to lie down. While lying down, defendant committed sexual acts against the female and raped her. Afterwards, defendant got dressed, unloaded his gun in front of her and said: "If I'd known it was this easy, I would have never brought my gun."

As they were traveling back towards the store, the female convinced defendant to let her out prior to arriving at the store. After being let out, she ran to the store and there waiting was the president of the store and a police officer. She described the assailant to the officer, and shortly thereafter defendant was apprehended.

## I.

[1] Defendant first contends that he is entitled to a new sentencing hearing because there was no evidence presented at his trial to support the trial court's finding, as an nonstatutory aggravating factor, that he committed the kidnapping and rape of the female with premeditation and deliberation. Because there was no evidence of contact between he and the female prior to 13 June 1995, defendant argues that the evidence presented at trial is susceptible of only one conclusion—that the female was a "random victim" of his, thereby making it impossible for him to have kidnapped and raped after a period of premeditation and deliberation. We disagree.

In evaluating the appropriateness of certain nonstatutory aggravating factors, our courts have consistently held that a trial court may consider whether the defendant committed the subject offenses with premeditation and deliberation.[3] A defendant is said to have committed an offense with "premeditation" if he formed the intent to commit the offense during some period of time, however short, before actually committing the offense.[4] An offense is committed with "deliberation" if the acts constituting the offense are done in a "cool state of

---

3. *See State v. Carter,* 318 N.C. 487, 349 S.E.2d 580 (1986); *State v. Smith,* 92 N.C. App. 500, 374 S.E.2d 617 (1988), *disc. rev. denied,* 324 N.C. 340, 378 S.E.2d 805 (1989).

4. *Smith,* 92 N.C. App. at 504, 374 S.E.2d at 619-20.

blood."[5] To be in such a state, however, does not necessarily mean that the defendant brooded over committing the offense, or that he reflected upon it for a week, a day or an hour, or any other appreciable length of time.[6] Rather, a defendant is said to have deliberated over an offense if he intended to commit the offense, and did so in furtherance of a fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose.[7] Finally, "in determining the question of premeditation and deliberation it is proper for the [trier of fact] to take into consideration the conduct of the defendant, before and after, as well as at the time of the [crime], and all attending circumstances."[8]

In light of the foregoing principles, we cannot agree with defendant that there was no evidence to support the trial court's finding that defendant kidnapped and raped the female with premeditation and deliberation. Without reiterating the particular facts of this case, we simply state here that our review of those facts convinces us that there was more than sufficient evidence to support the trial court's finding. In view of defendant's actions before, during and after he kidnapped and raped the female, we believe there was enough evidence for the trial court to find that he committed those offenses in both a cool and calculated manner.

Moreover, even in the absence of prior contact or ill will between defendant and the female, a reasonable inference could be drawn from defendant's actions and words that defendant had previously contemplated, for however long, kidnapping and raping someone. For instance, the fact that defendant told the female, after he already driven her to a field and raped her, that he would not have brought a gun if he had known that "it was going to be that easy" clearly evidences, in our opinion, the "cool state of blood" in which defendant was in when he drove his pick-up truck to Lutz Oil Company in the middle of the day on 13 June 1995. Contrary then to defendant's assertion, the inescapable conclusion is that the female, although a "random victim", was still the subject of defendant's premeditated and deliberated acts. That the female was in a sense, "random", does not alter the conclusion that defendant's actions towards her were

5. *Id.* at 504, 374 S.E.2d at 620.

6. *State v. Brown*, 249 N.C. 271, 271-73, 106 S.E.2d 232, 234 (1959) (quoting *State v. Hawkins*, 214 N.C. 326, 334, 199 S.E.2d 284, 289 (1938)).

7. *Id.*

8. *Id.*; *see also State v. Misenheimer*, 304 N.C. 108, 114, 282 S.E.2d 791, 796 (1981).

not. Accordingly, we hold that the trial court committed no error in finding, as an aggravating factor, that defendant kidnapped and raped the female after a period of premeditation and deliberation.

## II.

**[2]** Next, defendant contends that the trial court erred in not finding as a mitigating factor that he was a person of good character and reputation in his community. Evidence of this factor, defendant argues, was uncontradicted, substantial and inherently credible, thereby warranting mitigation of his sentence. We disagree.

When evidence in support of a mitigating factor is uncontradicted, substantial and inherently credible, it is error for the trial court to simply ignore it.[9] When a defendant argues that his evidence is sufficient to compel a finding of a mitigating factor, he bears the same burden of persuasion as a party seeking a directed verdict.[10] He must demonstrate that "the evidence so clearly established the fact in issue that no reasonable inferences to the contrary can be drawn, and that the credibility of the evidence is 'manifest as a matter of law.' "[11]

In *Freeman*, our Supreme Court applied the foregoing principles to uphold a trial court's refusal to find, as a mitigating factor, that the defendant was a person of good character or reputation in his community.[12] The defendant in that case, who had been convicted of burglary and assault with a deadly weapon, brought forth several witnesses during his sentencing hearing to show his good character and reputation. Each witness testified to the fact that the defendant was not a violent person, that he was well liked and that he did not get into trouble. Despite the testimony of these witnesses, our Supreme Court held that the defendant's evidence, when considered in light of his prior conviction record, "[did] not rise to the level of being uncontradicted, substantial and manifestly credible."[13] According to the court, such a finding could not be made because defendant's witnesses were "either relatives, close friends or persons who had little knowledge of defendant's general character and reputation in the community."[14]

---

9. *State v. Freeman*, 313 N.C. 539, 551, 330 S.E.2d 465, 474-75 (1985) (citing *State v. Jones*, 309 N.C. 214, 218-19, 306 S.E.2d 451, 454 (1983)).

10. *Jones*, 309 N.C. at 219, 306 S.E.2d at 455.

11. *Id.* at 219-20, 306 S.E.2d at 455 (quoting *North Carolina National Bank v. Burnette*, 297 N.C. 524, 256 S.E.2d 388 (1979)).

12. 313 N.C. at 551-52, 330 S.E.2d at 474-75.

13. *Id.*

14. *Id.*

The evidence before us in the instant case is similar to that which was before the court in *Freeman*. Here, defendant, like the defendant in *Freeman*, had a prior conviction on his record—in this case, assault with a deadly weapon—and all but three of the ten character witnesses put on by defendant were either his relatives or close friends. In addition, many of the witnesses who testified as to defendant's "good character" lived in different towns from defendant, making their knowledge of defendant's general character and reputation in the community somewhat suspect. Furthermore, our review of the testimony of defendant's character witnesses reveals that, for the most part, these witnesses testified as to defendant's lack of bad character and his good work habits more so than they did his good character and reputation in the community.

Given the nature of defendant's character evidence and the fact that defendant was previously convicted of assault with a deadly weapon, we cannot conclude here that the credibility of defendant's evidence is "manifest as a matter of law." Like the evidence presented by the defendant in *Freeman*, the evidence brought forth by defendant in the instant case cannot be said to so clearly establish defendant's good character and reputation that no reasonable inferences to the contrary can be drawn.[15] As the court observed in *Freeman*, "good character, as the term is used in the Fair Sentencing Act, means something more than the mere absence of bad character."[16] Undoubtedly, it also means something more than being a person who has a good worth ethic, as was testified to by many of defendant's witnesses. For this reason, we find no error in the trial court's refusal to find, as a mitigating factor, that defendant was a person of good character and reputation in his community.

### III.

[3] By his third assignment of error, defendant contends that the trial court erred by failing to find that a recent brain surgery he underwent and his need to take seizure-preventing medication were mental conditions which mitigated his culpability for the kidnapping and rape the female. Again, we disagree.

N.C. Gen. Stat. § 15A-1340.16(e)(3) allows a trial court to reduce a defendant's sentence upon a showing that, at the time of the offenses committed, the "defendant was suffering from a mental or

15. *Id.*

16. *Id.* (citing *State v. Benbow*, 309 N.C. 538, 548, 308 S.E.2d 647, 653 (1983)).

physical condition that was insufficient to constitute a defense but significantly reduced [his] culpability for the offense." However, as with all showings he must make regarding mitigating factors, the defendant has the burden of showing the existence of the mental defect and its effects upon his conduct by a preponderance of the evidence.[17]

In the instant case, defendant has clearly failed to meet his burden. The only evidence of defendant's mental conditions came from defendant himself, his wife and the sister of his wife's ex-husband. There was no medical or expert testimony presented concerning the existence of any of defendant's alleged mental conditions. More importantly, there was absolutely no evidence that either defendant's recent brain surgery or the medication he was taking to prevent him from having seizures had a significant effect, or any effect for that matter, on his actions at the time he kidnapped and raped the female. Accordingly, we hold that the trial court did not err in failing to find that defendant's recent brain surgery and his need to take medication were mental conditions which reduced his culpability for the offenses committed.

## IV.

[4] Lastly, defendant contends that the trial court erred by adding a 60 month firearm enhancement to his second-degree kidnapping conviction. With this contention, we agree.

In *State v. Westmoreland*,[18] our Supreme Court stated that a trial court, in sentencing a defendant for a crime, could not aggravate that sentence with acts of the defendant "which form[ed] the gravamen of contemporaneous convictions of joined offenses."[19]

In the instant case, defendant was convicted of first degree rape based upon his use of a dangerous weapon, and convicted, although not sentenced, of first-degree kidnapping based upon the commission of a sexual assault. The court, however, arrested judgment on the first-degree kidnapping conviction and instead sentenced defendant to second-degree kidnapping. It then increased defendant's kidnapping sentence by the 60 months proscribed under

---

17. *See State v. Jones, supra.*

18. *supra.*

19. *Id.* at 449, 334 S.E.2d at 227; *see also State v. Lattimore*, 310 N.C. 295, 311 S.E.2d 876 (1984).

N.C. Gen.Stat. § 15A-1340.16A, North Carolina's firearm enhancement statute, because it found that a firearm was used in the commission of the offenses. Based upon these circumstances, defendant argues that the use of a firearm was the "gravamen" of his first-degree rape conviction and therefore, an improper factor to be used in aggravating his kidnapping conviction.

In response, the state argues that the "gravamen" of first-degree rape is the same as that of common law rape—non-consensual sexual intercourse, not the use of a firearm. Therefore, the state contends, the trial court did not use the "gravamen" of first-degree rape to aggravate defendant's kidnapping conviction; rather, it argues, it merely used *an element* of the first-degree rape offense to aggravate defendant's conviction. Where the state's argument falls short, however, is in its assumption that non-consensual sexual intercourse alone is *the gravamen* of the offense of first-degree rape. It is not.

N.C. Gen. Stat. § 14-27.2 defines first-degree rape as follows:

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

. . .

(2) With another person by force and against the will of the other person, *and*:

a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; or

b. Inflicts serious personal injury upon the victim or another person; or

c. The person commits the offense aided and abetted by one or more other persons.

(emphasis added). This statute establishes that proof of non-consensual sexual intercourse is not all that is needed for a defendant to be properly convicted of first-degree rape. If the alleged rape was committed by force and against the will of the victim, then the State must also prove, beyond a reasonable doubt, that the defendant either employed or displayed a dangerous weapon, inflicted serious bodily injury on the victim, or was aided and abetted by another. Proof, therefore, of either of these three elements is *essential* to a

conviction of first degree rape based upon forcible intercourse, otherwise, a defendant can only be convicted of rape in the second-degree.[20]

Here, the State relied only upon evidence showing that the forcible rape occurred with the aid of a dangerous weapon to establish proof of first-degree rape. Use of a firearm, therefore, was a "gravamen" of defendant's first-degree rape conviction, and as such, under *Westmoreland*, could not then be used by the trial court to aggravate defendant's second-degree kidnapping conviction. As such, we must vacate that part of defendant's sentence which was enhanced by the firearm enhancement statute. With that part of defendant's sentence vacated, the remaining parts of defendant's sentence as set by the trial court stand as: For the Class E felony of second-degree kidnapping, a minimum sentence of 32 months and a maximum sentence of 60 months and for the Class B1 felony of first-degree rape, a consecutive minimum term of 320 months and a maximum term of 393 months.

VACATED and REMANDED for imposition of judgment in accordance with this opinion.

Judges WALKER and SMITH concur.

---

20. *Compare* N.C. Gen. Stat. § 14-27.3; *see also State v. Barnette*, 304 N.C. 447, 466, 284 S.E.2d 298, 309 (1981) (stating that the sole distinction between the crimes of first degree rape and second-degree rape is the elements of the use of a deadly weapon, serious bodily injury, and aiding and abetting).