STATE OF NORTH CAROLINA v. DERRICK ANTONIO McCREE, Defendant

No. COA02-796

(Filed 19 August 2003)

## 1. Identification of Defendants— photographic lineup—in-court identification—motion to suppress

The trial court did not err in a robbery with a dangerous weapon, second-degree kidnapping, and attempted robbery with a dangerous weapon case by denying defendant's motion to suppress his identification by four prosecuting witnesses from a photographic lineup and also their subsequent in-court identification, because: (1) although defendant's face appeared fuller and more round than four of the five men depicted in the lineup, it did not render the lineup impermissibly suggestive; (2) there was no impermissibly suggestive intent or effect from a detective's decision to use an older photo of defendant rather than his more recent photo from his arrest based on the fact that the more recent photo was too dark to show sufficient facial detail; (3) the photo lineup was assembled fairly and presented to each of the witnesses separately in a fair and unbiased manner with instructions not to talk to each other until each had seen the lineup and that they were under no obligation to pick anyone; and (4) the prosecuting witnesses' in-court identification of defendant was not tainted by the photo lineup.

## 2. Evidence— prior crimes or bad acts—defendant driving vehicle reported stolen

The trial court did not abuse its discretion in a robbery with a dangerous weapon, second-degree kidnapping, and attempted robbery with a dangerous weapon case by admitting an officer's testimony that defendant was driving a vehicle which had been reported stolen at the time he was arrested, because: (1) N.C.G.S. § 8C-1, Rule 404(b) did not require exclusion of testimony that the vehicle had been reported stolen, and the officer did not testify that defendant stole the vehicle; (2) the evidence was offered to explain defendant's presence in the photographic lineup compiled following his arrest while driving a vehicle similar to the one that prosecuting witnesses described as being driven by the robbers; (3) the evidence was not offered for the improper purpose of proving that defendant was a person of bad character with the propensity to commit armed robbery; and

STATE v. McCREE

[160 N.C. App. 19 (2003)]

(4) the probative value of the evidence outweighed any danger of unfair prejudice.

### 3. Kidnapping— second-degree—motion to dismiss—sufficiency of evidence—restraint and removal

The trial court did not err by denying defendant's motion to dismiss the charge of second-degree kidnapping that was based on the restraint and removal of one of the victims from one room to another inside an apartment to facilitate the robberies committed therein, because a jury could reasonably find that defendant's restraint and removal of the victim for the purpose of assisting in the robberies of the apartments' other occupants exposed the victim to a greater danger than that inherent in the armed robbery itself.

### 4. Robbery— dangerous weapon—personal property taken—no fatal variance

There was no fatal variance between an indictment alleging that defendant took "personal property, wallet and its contents, one video cassette recorder, one television" from the person and presence of the victim by use of a firearm and evidence that defendant took $50.00 in cash from the victim at gunpoint and that defendant's accomplice took the victim's VCR and television from downstairs while defendant was robbing the apartment's upstairs occupants.

Appeal by defendant from judgment entered 3 July 2001 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 March 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for the State.*

*Everett & Hite, L.L.P., by Kimberly A. Swank, for defendant appellant.*

ELMORE, Judge.

Derrick Antonio McCree (defendant) appeals from judgments entered 3 July 2001 consistent with jury verdicts finding him guilty of two counts of robbery with a dangerous weapon, one count of second degree kidnapping, and one count of attempted robbery with a dangerous weapon. The charges against defendant arose out of an armed incursion into an apartment shared by several men and various fam-

ily members. For the reasons stated herein, we conclude defendant received a fair trial free of prejudicial error, and we therefore uphold the judgments entered upon his convictions.

Evidence presented at a pretrial suppression hearing and at trial tended to show that in August 1998, Anselmo Martinez Mendez (Anselmo), Roberto Martinez Esquivez (Roberto), Mario Rivas Rivera (Mario), Jose Garcia (Jose), Anselmo Martinez Lopez (Omar), and Ensel Martinez Mendez (Ensel), along with several of their respective family members, shared a two-bedroom apartment in Charlotte, North Carolina. On the evening of 22 August 1998, Anselmo, Mario, Jose, and Omar were drinking beer on the patio outside the apartment following a cookout. Roberto was out and Ensel was asleep with his family in an upstairs bedroom. Between 10:30 and 11:30 p.m., Mario went inside and went to sleep in the other bedroom. Roberto returned home at approximately 2:00 a.m. and joined Anselmo, Jose and Omar on the patio. Shortly thereafter, Jose went inside.

At approximately 2:30 a.m., Roberto, Anselmo, and Omar observed a dark-colored sport utility vehicle drive past the apartment twice, then stop. Two black males approached, one holding a gun, and shouted "[T]his is [the] Police Department. Nobody move." Anselmo and Omar ran inside the apartment, inadvertently knocking Roberto to the ground. Anselmo continued upstairs into the bedroom where Mario was sleeping. The man with the gun, later identified as defendant, pointed the gun at Roberto, told him to get up, and asked if he spoke English. When Roberto answered "yes," defendant said "You gonna [sic] help me because you speak good English." Defendant then took $50.00 from Roberto's pocket, put the gun to Roberto's head, and forced him into the apartment.

Once inside the apartment, defendant and Roberto encountered Jose in the kitchen. Defendant shoved Roberto aside and demanded money from Jose. When Jose replied that he had none, defendant pointed the gun at him and pulled the trigger twice but the gun did not fire. Defendant then put the gun to Roberto's back and forced him into the living room, then upstairs. Roberto first told defendant not to go into the bedroom where Ensel and his family were sleeping because there were children inside, then shouted to Ensel in Spanish not to open the door and to call 911. Defendant then forced open the door to the other bedroom, where he encountered Mario, who was talking to the 911 operator on a cordless telephone, and Anselmo. Defendant took the telephone and placed it in his pocket, then took approximately $40.00 from Anselmo's shirt pocket. Defendant

demanded money from Mario and pulled Mario's pants down looking for money, but he did not take any money from Mario. While these events were transpiring upstairs, the second black male was downstairs taking from the living room a television, stereo, and VCR that belonged to Roberto.

Defendant then forced Roberto at gunpoint back across the hall to Ensel's room and ordered Roberto to tell Ensel in English to open the door. Roberto again shouted to Ensel in Spanish not to open the door and to call 911. Defendant forced open the door, but upon observing children in the room exclaimed "I don't want nothing to do with kids" and ran downstairs. Defendant and the second black male then ran out the back door and departed in the dark-colored sport utility vehicle, which according to the victims' testimony appeared to be either a Ford Expedition or Explorer or a Lincoln Navigator.

Shortly thereafter, Officer Steven Blackwell and other officers from the Charlotte-Mecklenburg Police Department arrived at the apartment. Since none of the officers spoke Spanish, they only interviewed Roberto, the lone English speaker among the apartment's occupants. According to Officer Blackwell's report, Roberto described the armed intruder as a black male in his mid-twenties, approximately 6'2" and 280 pounds, with gold caps on his front teeth. Roberto described the second man as a black male, shorter and skinnier than the man with the gun. Roberto described their vehicle as a burgundy sport utility vehicle, possibly a 1997 or 1998 Expedition or Explorer.

On 8 September 1998, approximately two weeks after the robbery, Officer Luke Sell of the Charlotte-Mecklenburg Police Department stopped a black 1998 Ford Expedition driven by defendant. Officer Sell testified that he ran a computer check on the vehicle which revealed that it had been reported stolen. On cross-examination, defense counsel elicited testimony from Officer Sell that the vehicle was a rental car which had been reported stolen because it was not returned on time. Officer Sell arrested defendant and his two passengers and transported them to the police department's Felony Investigations Bureau, where they were observed by Detective Matthew Thompson. Detective Thompson noted that defendant and one of the passengers matched Roberto's descriptions of the men who robbed him. Detective Thompson then prepared a photographic lineup which included defendant's picture. Detective Thompson testified that since the picture taken that day was too dark to accurately depict defendant's facial features, he used another pic-

ture of defendant, taken following a December 1997 arrest, in the photo lineup. Detective Thompson further testified that to complete the photo lineup he sought out photographs of five men with features similar to defendant, and that defendant's picture was randomly placed by computer in one of the lineup's six photo slots. Detective Thompson also prepared a second photo lineup containing a picture of one of defendant's passengers at the time of his arrest.

On 9 October 1998, Detective Thomas Ledford and Officer Gilberto Narvaez showed the photo lineup to Roberto, Anselmo, Jose, and Mario. Detective Ledford testified that he first showed the lineup to Roberto while Anselmo, Jose, and Mario were kept in another room. Detective Ledford instructed Roberto that the person who robbed him may or may not be in the lineup, and that he was not obligated to pick out anyone. Roberto identified defendant's photo as the man with the gun who robbed him. Officer Narvaez instructed the other men not to communicate with each other during the lineup, then proceeded to show the photo lineup to Anselmo, Jose, and Mario individually, repeating to each the instructions Detective Ledford had given to Roberto. Anselmo also identified defendant's photo from the lineup, as did Mario. Jose stated that the photograph of defendant "look[ed] a lot like the guy who robbed us with the gun that night," but that he was not absolutely certain. The officers also showed the second photo lineup to all four men, but none of them recognized anyone from that lineup. After they had been shown the photo lineup, Officer Narvaez took written statements from Anselmo, Mario, and Jose individually. Anselmo described the armed robber as a "tall and heavy-set" black male with a "round face;" Jose and Mario described him as a "fat" black male.

The trial court denied defendant's pretrial motion to suppress the identifications made by Roberto, Anselmo, Mario and Jose of defendant from the photo lineup. Roberto, Anselmo, Mario and Jose each testified at trial, and each made, over defendant's objection, an in-court identification of defendant as the armed robber. Each testified that defendant appeared to have lost weight since the robbery. Defendant did not testify but offered testimony from a Mecklenburg County Sheriff's Department records custodian, who testified that arrest records listed defendant as 6 feet, 190 pounds in December 1997 and 6 feet, 205 pounds in September 1998.

Defendant brings forth four assignments of error, asserting the trial court erred by (1) denying defendant's motion to suppress his identification by the four prosecuting witnesses; (2) admitting Officer

Sell's testimony that defendant was driving a vehicle which had been reported stolen at the time he was arrested; (3) denying defendant's motion to dismiss the second-degree kidnapping charge; and (4) failing to dismiss one of the robbery with a dangerous weapon counts due to a fatal variance between the indictment and the evidence presented at trial.

**[1]** By his first assignment of error, defendant contends the trial court erred by denying his motion to suppress the pretrial identifications from the photographic lineup, as well as the subsequent in-court identifications, of defendant by Roberto, Anselmo, Mario and Jose. Defendant asserts that the photo lineup was impermissibly suggestive in both its composition and presentation, and that as a result both the pretrial and in-court identifications were tainted. The State maintains that the photo lineup was assembled fairly and presented to each of the witnesses in a fair and unbiased manner. We agree with the State and overrule this assignment of error.

"Whether an identification procedure is unduly suggestive depends on the totality of the circumstances." *State v. Rogers*, 355 N.C. 420, 432, 562 S.E.2d 859, 868 (2002). It is well-settled that identification evidence must be excluded as a violation of a defendant's due process rights "where the facts show that the pretrial identification procedure was so suggestive as to create a very substantial likelihood of irreparable misidentification." *State v. Powell*, 321 N.C. 364, 368, 364 S.E.2d 332, 335, *cert. denied*, 488 U.S. 830, 102 L. Ed. 2d 60 (1988). This due process analysis requires that we conduct a two-part inquiry. We must first determine whether the identification procedures at issue were impermissibly suggestive. *State v. Fowler*, 353 N.C. 599, 617, 548 S.E.2d 684, 698 (2001), *cert. denied*, 535 U.S. 939, 152 L. Ed. 2d 230 (2002). Only if the procedures were impermissibly suggestive must we then move to the second part of the inquiry and determine whether the procedures created a substantial likelihood of irreparable misidentification. *Id.*

In the instant case, after hearing testimony and argument on defendant's motion to suppress, the trial court made the following oral findings and conclusions:

> With respect to the . . . four witnesses, there are a good number of similarities in what the four witnesses say. . . . [T]hey all say he was a big man and that he had a round face and I believe three out of four of them say that he had a gold tooth or teeth. . . . There was, according to the believable evidence, a

significant amount of lighting whereby . . . these witnesses had the opportunity to see him in some detail. There is no evidence . . . as to the time that elapsed between the time that the perpetrator came in contact with the first person at the apartment . . . until the time that [defendant] exited the apartment, . . . but it had to be a right appreciable period of time for all those things to have happened. Certainly enough opportunity for these people to have seen what they say they saw and so I don't see from the believable evidence in this case that there was any impermissible suggestion as to the witnesses from the lineup. They were shown separately photographs—six on one sheet of paper and six on the other. Only one sheet of the paper contained a photograph of the defendant. They were questioned about those photographs separately. No suggestion was made as to whether or not the perpetrator was in any of the photographs. . . .

The [c]ourt does not find that this evidence should be suppressed or excluded; further do not find that there were any unconstitutional [sic] rights of the defendant . . . in any way or manner violated and so the COURT DENIES the Motion to SUPPRESS with respect to these four witnesses.

After a careful review of the record, we agree with the trial court that the photo lineup did not create any "impermissible suggestion" in the minds of the prosecuting witnesses regarding defendant's identity as the armed robber. We are bound by the trial court's findings of fact when they are supported by competent evidence. *Fowler*, 353 N.C. at 618, 548 S.E.2d at 698. The record is replete with evidence supporting the trial court's findings. Roberto, Anselmo, Mario, and Jose each testified that he saw the armed robber's face under well-lit conditions during face-to-face exchanges with him during the robbery. Detective Thompson testified that he completed the lineup with photos of five men similar to defendant in age, race, hair color and amount of facial hair, and that the photos were randomly arranged within the lineup by computer. Our review of the photo lineup reveals six black males of approximately the same age, with similar hairlines and similar amounts of facial hair. While it appears to this Court that defendant's face appears fuller and more round than four of the other five men depicted in the lineup, we are not persuaded by defendant's argument that this renders the lineup impermissibly suggestive. "A photographic lineup is not impermissibly suggestive merely because defendant has a distinctive appearance." *State. v. Freeman*, 313 N.C. 539, 545, 330 S.E.2d 465, 471 (1985) (affirming that photographic

lineup was lawful despite the defendant's contention that he was the heaviest individual in the array). Detective Thompson further testified that he used a December 1997 photograph of defendant rather than the photo from defendant's 8 September 1998 arrest because the more recent photo was too dark to show sufficient facial detail. We discern no impermissibly suggestive intent or effect from Detective Thompson's decision to use the older photo.

The officers who conducted the photo lineup testified that they showed the lineup to the prosecuting witnesses separately, with instructions not to talk to each other until each had seen the lineup and with the admonition that the armed robber may or may not be present in the lineup and that they were under no obligation to pick anyone out. This evidence is sufficient to support the trial court's findings, which in turn support its ultimate legal conclusion that the prosecuting witnesses' identifications were not the result of an impermissibly suggestive procedure. "[A]ll that is required is that the lineup be a fair one and that the officers conducting it do nothing to induce the witness to select one participant rather than another." *State v. Grimes*, 309 N.C. 606, 610, 308 S.E.2d 293, 295 (1983). We conclude that the photo lineup was neither assembled, nor presented to the prosecuting witnesses, in such a manner as to render it impermissibly suggestive. Because we hold that the photo lineup was not impermissibly suggestive, we need not proceed to the second part of the inquiry and determine whether the procedures created a substantial likelihood of irreparable misidentification. *Fowler*, 353 N.C. at 617, 548 S.E.2d at 698. Consequently, we conclude that the prosecuting witnesses' in-court identification of defendant was not tainted by the photo lineup. *Freeman*, 313 N.C. at 545, 330 S.E.2d at 471.

We hold that the trial court correctly denied defendant's motion to suppress the identification testimony.

[2] By his next assignment of error, defendant contends the trial court erred by allowing Officer Sell to testify that he stopped defendant prior to his arrest two weeks after the robbery for driving a vehicle that had been "reported stolen." Defendant asserts this testimony was irrelevant and unduly prejudicial, and that its admission violated Rule 404(b) of the North Carolina Rules of Evidence. We disagree.

Rule 404(b) provides in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in

conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2001). Our Supreme Court has stated that the Rule 404(b) "list of permissible purposes for admission of 'other crimes' evidence is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852-53, *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995).

In the instant case, defendant was arrested on 8 September 1998 after Officer Sell determined that the black Ford Expedition defendant was driving had been reported stolen. At trial, following a voir dire, the trial court ruled that "[i]f [Officer Sell] is going to testify that the vehicle had been reported stolen, I'm going to let him testify to that but I am not going to let him testify that it was a stolen vehicle, simply that it had been REPORTED that it was stolen." On direct examination, Officer Sell followed the trial court's ruling, testifying over defendant's objection as follows:

> I observed a black Ford Expedition on Zebulon Avenue. I saw it pulling away from a parked position, I got behind that vehicle and followed it . . . . I stayed behind the vehicle until I did a computer check . . . of the vehicle . . . and when it came back, it came back that [t]he vehicle was reported stolen.

On cross examination, defense counsel elicited testimony that the vehicle was reported stolen because it was an overdue rental. Officer Sell testified on re-direct examination that he had no knowledge as to who rented the vehicle.

On these facts, we conclude that Rule 404(b) does not require exclusion of Officer Sell's testimony that the vehicle defendant was driving when he was stopped had been "reported stolen." Officer Sell did not testify that *defendant* stole the vehicle; to the contrary, Officer Sell testified that he did not know who stole it. We agree with the State's contention that this evidence was offered to explain defendant's presence in the photographic lineup compiled following his arrest while driving a vehicle similar to the one the prosecuting witnesses described as being driven by the robbers. It

was not offered for the purpose, improper under Rule 404(b), of proving that defendant was a person of bad character with a propensity to commit armed robbery.

Defendant contends that even if this evidence was properly admitted under Rule 404(b), it was inadmissible under N.C. Gen. Stat. 8C-1, Rule 401 (2001) because it was not relevant, or alternatively because under N.C. Gen. Stat. § 8C-1, Rule 403 (2001) its probative value was substantially outweighed by the danger of unfair prejudice. First, we conclude this evidence was relevant because it offered an explanation for why defendant was detained and included in the photographic lineup after he was stopped driving a vehicle similar to that described by the prosecuting witnesses as being driven by the armed robber. Furthermore, the trial court's decision to admit this evidence is a matter within its discretion, and "[a] trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Brown*, 350 N.C. 193, 209, 513 S.E.2d 57, 67 (1999) (quoting *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)). Likewise, "[w]hether to exclude relevant but prejudicial evidence under Rule 403 is a matter left to the sound discretion of the trial court." *State v. Handy*, 331 N.C. 515, 532, 419 S.E.2d 545, 554 (1992). While Officer Sell's testimony that defendant was arrested while driving a vehicle that had been reported stolen is arguably prejudicial to defendant, we conclude that its probative value outweighed any danger of unfair prejudice, and we discern no abuse of discretion in the trial court's decision to admit this testimony. This assignment of error is without merit.

[3] By his next assignment of error defendant maintains the trial court erred in failing to dismiss the kidnapping charge, which was based on the restraint and removal of Roberto from one room to another inside the apartment to facilitate the robberies committed therein. Specifically, defendant argues this charge should have been dismissed because there was insufficient evidence to support a conclusion that the restraint and removal of Roberto was separate and apart from the underlying robberies. We disagree.

Section 14-39 of our General Statutes provides in pertinent part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, . . . shall be guilty of

kidnapping if such confinement, restraint or removal is for the purpose of:

. . . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony.

N.C. Gen. Stat. § 14-39(a) (2001). Our Supreme Court has construed the statute as follows:

It is self-evident that certain felonies (e.g., forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy.

*State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). In determining whether the confinement, restraint, or removal of the victim during commission of an armed robbery will also support a kidnapping conviction, "[t]he key question . . . is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping 'exposed [the victim] to greater danger than that inherent in the armed robbery itself, . . . .' " *State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (quoting *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981)).

"In ruling on a motion to dismiss, the trial court is required to view the evidence in the light most favorable to the State, making all reasonable inferences from the evidence in favor of the State." *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002). In the case *sub judice*, the evidence viewed in the light most favorable to the State shows that defendant *first* robbed Roberto of $50.00, *then* forcibly restrained Roberto and moved him about the apartment at gunpoint for use as an interpreter to facilitate the robbery of the apartment's Spanish-speaking occupants. After defendant's robbery of Roberto was complete, defendant put the gun to Roberto's head and forced him into the kitchen, where defendant unsuccessfully attempted to rob Jose. Defendant subsequently forced Roberto at gunpoint into the living room and then upstairs, where he was ordered to assist in defendant's plan to rob the apartment's remaining

occupants. The evidence shows that when defendant and Roberto arrived upstairs, Mario was on the telephone calling 911 and Ensel refused to open his bedroom door for defendant after Roberto shouted to him in Spanish not to do so. We conclude that from this evidence, a reasonable inference arises that defendant could have become dissatisfied with Roberto's assistance and shot or otherwise harmed him. We hold that from this evidence, a jury could reasonably find that defendant's restraint and removal of Roberto for the purpose of assisting in the robberies of the apartments' other occupants exposed Roberto to greater danger than that inherent in the armed robbery itself. Accordingly, this assignment of error is overruled.

[4] By his final assignment of error, defendant asserts the trial court erred in denying his motion to dismiss the armed robbery charge relating to Roberto because there is a fatal variance between the indictment and the evidence presented at trial. Specifically, defendant contends the evidence presented at trial tended to prove that defendant took $50.00 from Roberto, while the indictment alleged that defendant took from Roberto a wallet and its contents, a television, and a VCR. We are not persuaded by defendant's argument.

"It is well settled that the evidence in a criminal case must correspond to the material allegations of the indictment, and where the evidence tends to show the commission of an offense not charged in the indictment, there is a fatal variance between the allegations and the proof requiring dismissal." *State v. Williams*, 303 N.C. 507, 510, 279 S.E.2d 592, 594 (1981). Not every variance between the allegations of the indictment and the proof presented at trial is a material variance requiring dismissal. *State v. Furr*, 292 N.C. 711, 721, 235 S.E.2d 193, 200, *cert. denied*, 434 U.S. 924, 54 L. Ed. 2d 281 (1977).

Here, defendant was charged with robbery with a dangerous weapon of Roberto in violation of N.C. Gen. Stat. § 14-87, the essential elements of which are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998); *see also* N.C. Gen. Stat. § 14-87(a) (2001). This court has previously stated that in an indictment for robbery with a dangerous weapon, the gist of the offense is not the taking of personal property, but rather a taking or attempted taking by force or putting in fear of the victim by the use · of a dangerous weapon. *State v. Mahaley*, 122 N.C. App. 490, 492, 470

S.E.2d 549, 551 (1996) (stating that "armed robbery is mainly an offense against the person").

In the instant case, the indictment at issue alleged that defendant took "personal property, wallet and its' [sic] contents, one (1) video cassette recorder, one (1) television, of value, from the person and presence of Roberto Martinez . . . . by means of an assault consisting of having in his possession and threatening the use of a firearm, a handgun, a dangerous weapon, whereby the life of Roberto Martinez was threatened and endangered." The evidence presented at trial tended to show that defendant took $50.00 in cash from Roberto at gunpoint and that defendant's accomplice actually took Roberto's television and VCR from downstairs while defendant was robbing the apartment's upstairs occupants. On these facts, we conclude the indictment properly alleged that defendant took personal property from Roberto "by force or putting in fear by the use of firearms or other dangerous weapon[,]" *State v. Harris*, 8 N.C. App. 653, 656, 175 S.E.2d 334, 336 (1970), such that defendant was advised "of the nature and cause of the accusation sufficiently to allow him to meet it, to prepare for trial and to enable him to plead in bar of further prosecution after judgment," *Furr*, 292 N.C. at 722, 235 S.E.2d at 200. We find this assignment of error to be without merit.

No error.

Judge MARTIN and Judge HUDSON concur.