STATE OF NORTH CAROLINA v. KEITH LAVORIS HALL

No. COA07-1412

(Filed 2 December 2008)

**1. Criminal Law— motion for appropriate relief on appeal— cumulative evidence—different result not apparent**

A motion for appropriate relief on the basis of newly discovered evidence was heard by the Court of Appeals where the evidence before it was sufficient to reach the merits of the motion. The motion was denied because the new evidence was in the form of letters which were merely cumulative and would be introduced for no other reason but to impeach or discredit a witness, and it is impossible to say that the newly discovered letters would cause a jury to reach a different verdict.

**2. Evidence— portions of letters—admissibility**

The trial court did not err in a prosecution for murder and robbery by allowing the State to introduce photocopied portions of letters that defendant wrote while awaiting trial. Although defendant argued that the evidence should have been excluded because only portions of the letters were available, there is no evidence that the excluded portions were destroyed, defendant was the author of the letters and was in the best position to know whether the excluded portions were relevant or explanatory, and defendant had a duty to obtain those letters during discovery.

### 3. Robbery— sufficiency of evidence—circumstantial

There was sufficient evidence of robbery with a dangerous weapon where the evidence, though circumstantial, reasonably gave rise to inferences that defendant and an accomplice acted with a mutual understanding or plan and unlawfully took or attempted to take the victim's personal property by use of a firearm.

### 4. Homicide— first-degree murder—sufficiency of evidence— no physical evidence

The trial court did not err by denying defendant's motion to dismiss a first-degree murder charge where defendant contended that there was no physical evidence to establish that defendant was at the scene, but there was evidence that defendant and an accomplice were there hours before the crime, that defendant admitted having a plan to get some money that had gone badly, that all four victims died from gunshot wounds to the head, that defendant and the accomplice acted suspiciously around and after the time of the crime, that clothing bearing the blood of one of the victims was recovered from a dumpster at defendant's apartment complex, and that defendant told two separate witnesses that he had killed four people.

### 5. Homicide— felony murder—sufficiency of evidence—substantial evidence of armed robbery

There was sufficient evidence of felony murder where there was substantial evidence to support the underlying charge of armed robbery.

### 6. Evidence— bloody clothing recovered from dumpster— connection to defendant

The trial court did not abuse its discretion in a robbery and murder prosecution by admitting into evidence a pair of bloody blue jeans recovered from a dumpster in defendant's apartment complex. Although defendant argued that the blue jeans were not sufficiently connected to him, they were stained with the blood of a victim, they were recovered in his apartment complex, and defendant was seen walking toward the dumpster from which the jeans were recovered. These are sufficient links in a chain that would permit, but not require, the jury to infer defendant's involvement in the murder. The fact that there is no direct evidence showing that defendant wore the clothing during the murders goes to its weight rather than its admissibility.

Appeal by defendant from judgments entered 1 December 2006 and 5 December 2006 by Judge Ronald K. Payne in Gaston County Superior Court. Heard in the Court of Appeals 19 August 2008.

*Nora Henry Hargrove for defendant appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Jonathan Babb, for the State.*

McCULLOUGH, Judge.

On 2 September 2003, defendant Keith Lavoris Hall ("defendant") was indicted with four counts of first-degree murder, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. Defendant's trial commenced at the 23 October 2006 Criminal Session of Gaston County Superior Court. The relevant evidence presented at trial tended to show the following: In August of 2003, Darryl Brown and Billy Collins lived together in a house located at 110 River Buff Lane in Belmont. Brown and Collins made and sold crack cocaine from this house. Brown kept several firearms at this house as well.

Brown met defendant, who he knew as "Blue," in July of 2003. Between July of 2003 and 20 August 2003, defendant had been to Brown's house two or three times. Defendant's girlfriend, Crystal Goins, had accompanied defendant on each of those occasions.

On 20 August 2003, Collins, and three women, Crystal Ellis, Amanda Sossaman, and Melissa Petrie, were at Brown's house for most of the day. At around noon, Brown traveled into town to drop off some cocaine. When Brown returned to his house, defendant and Goins were there. Defendant was purchasing crack cocaine from Collins. During this transaction, in defendant's view, Collins handed Brown $2,000.00 in cash to count. Collins then placed the cash in his pocket.

At approximately 5:30 p.m., Brown left his house and headed to Charlotte to purchase cocaine. At that time, Collins, Ellis, Sossaman, Petrie, Goins, and defendant were still at the house.

At approximately 7:30 p.m., Brown returned to his house. He had tried calling the house several times during his return trip, but there was no answer. When Brown entered his house, he found Collins dead, lying in a pool of blood. The three women were dead as well. In addition, Brown noticed that his dog had been let out of the house.

Brown testified that he panicked, fled his house, and headed to the home of his friend, Robbie Hodge.

After meeting with Hodge, Brown returned to his house, hid the cocaine that he had in his possession, and called 911. Thereafter, law enforcement arrived at the scene and found Crystal Ellis' body lying in the entryway of a bedroom just off of the den. She had been shot once in the back and once in the head. Billy Collins' body was lying in the kitchen, near the living room. He had a gunshot wound in the top of his head. The two other female victims were found seated or slouching on the sofa. Both had gunshot wounds on the top of their heads, among other places. Blood was splattered by the front door, on the coffee table, and in the kitchen. Law enforcement recovered six nine millimeter shell casings in the living room and a Taurus 9 millimeter pistol from underneath the sofa. There were also three .45 shell casings near the body of one of the female victims and one .45 shell casing near the body in the kitchen. Defendant's fingerprints were recovered from a Pepsi bottle found at the scene of the crime.

Wendy Scott, a crime scene investigator with the Gaston County Police, testified that when she arrived on the scene, Brown was nervous and upset, but was also cooperative. Scott did not see any blood on Brown, his clothing, or his shoes. Brown's hands were wiped to test for the presence of gunshot residue, but none was recovered. On cross-examination, Special Agent James Gregory of the North Carolina State Bureau of Investigation (SBI) explained that the fact that no gunshot residue was recovered from Brown's hands did not eliminate the possibility that Brown could have fired a gun, as any gunshot residue could have been removed if he had subsequently washed his hands.

Crystal Reckers, Goins' aunt, testified that she took defendant and Goins to look for an apartment on 21 August 2003 and that she noticed that defendant had a large sum of money to use for the deposit. Leslie Dale, the property manager of Shadow Creek Apartments, testified that on 21 August 2003, defendant and Goins applied for an apartment and paid a security deposit of $395 and pro-rated rent for August of $165. They paid in cash.

Wanda Willis, Goins' aunt, testified at trial that defendant and Goins had washed clothing and stayed over at her house on either 20 August 2003 or 21 August 2003. Law enforcement recovered several items from the room in Willis' house in which defendant and Goins had stayed, including among other items, a white T-shirt with red

stains on the front that appeared to be bloodstains, a pair of panties stained with blood, a pair of ankle socks, and a lease agreement.

On 22 August 2003, Sgt. Joseph Ramey of the Gaston County Police Department saw defendant walk toward some dumpsters at the end of a parking lot in the Shadow Creek Apartment complex. Ramey testified that defendant was gone for about thirty seconds and then came back towards the apartment complex. Although it had recently rained and everything else in the dumpster was still wet from the rain, Ramey recovered a dry "perfectly folded pair of blue jeans" from the dumpster in the area where defendant had walked. SBI tests revealed that the jeans found in this dumpster were stained with Crystal Ellis' blood. Defendant was subsequently arrested.

While in custody, defendant wrote several letters to Goins. Only portions of these letters were photocopied before they were mailed to Goins. In one letter, read at trial, defendant wrote to Goins that he and Goins "had to stick together." In another letter, read at trial, defendant wrote to Goins:

I have two out-of-town lawyers. . . . They told me that they didn't have no evidence on me, only evidence they have is your statements. I never wrote a statement. You don't—didn't suppose to write—you didn't suppose to write one without your lawyer being there. Your lawyer knows that, so he should be able to get them destroyed if you tell them you[] was high or [f—ed] up on pills or something. My lawyer also told me you was going to testify against me on trial. Don't do that. Let me ride my own. I'm a thug, a G-unit soldier, and you is still part of my team. Crystal, you know I love you.

Gene Dickens, defendant's cell mate testified that he "pieced together" from his conversations with defendant that defendant had killed four people, three of which, he "took out because they was there." There was evidence, however, that a few weeks before the trial started, defendant and Dickens were involved in an altercation, and Dickens might have testified against defendant in retaliation. Moreover, on cross-examination, Dickens admitted that the Assistant District Attorney had offered to assist Dickens with the Parole Review Commission.

Deputy Sheriff Donny Baynard testified that on 11 August 2005, during a routine frisk, Baynard recovered a foreign object from defendant's shoe. Defendant then yelled to Baynard, "That shank was

meant for you, motherf——er." Defendant stated, "I've killed four people already, what's one more, especially if it's a cop."

Defendant did not testify or present evidence at trial. On 14 November 2006, the jury found defendant guilty of robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, two counts of first-degree murder, both on the basis of malice, premeditation, and deliberation, as well as under the felony murder rule, and two counts of first-degree murder, only under the felony murder rule. Defendant was sentenced to consecutive terms of imprisonment of 108 to 139 months for robbery with a dangerous weapon, 42 to 60 months for conspiracy, and four consecutive terms of life imprisonment without parole for the four counts of first-degree murder. Defendant appeals.[1]

On appeal, defendant contends that the trial court erred by: (1) allowing into evidence portions of the letters that defendant wrote to Goins; (2) allowing into evidence the pair of blue jeans that was recovered from the dumpster at defendant's apartment complex; and (3) denying his motions to dismiss the charges for insufficient evidence.

## I. Motion for Appropriate Relief

[1] Defendant has moved for appropriate relief, pursuant to N.C. Gen. Stat. § 15A-1418 (2007), on the grounds that newly discovered evidence exists that was not available at trial. *See* N.C. Gen. Stat. § 15A-1415(c) (2007).

A motion for appropriate relief is a motion in the original cause and may be brought before the Court of Appeals if the case is then pending before this Court. N.C. Gen. Stat. §§ 15A-1411, -1418. The appellate court, faced with a motion for appropriate relief, "must decide whether the motion may be determined on the basis of the materials before it, or whether it is necessary to remand the case to the trial division for taking evidence or conducting other proceed-

---

1. As a preliminary matter, we conclude that the judgments were entered improperly. It is well-settled that where a jury returns its guilty verdict as to first-degree murder, solely on the basis of the felony murder rule, the judgment must be arrested with respect to the underlying felony charge. *State v. Adams*, 331 N.C. 317, 333-34, 416 S.E.2d 380, 389 (1992). Here, the record shows that the jury returned its guilty verdicts as to two counts of first-degree murder solely on the basis of defendant's involvement in the commission of a dangerous felony, namely, the armed robbery of Billy Collins. Thus, while it has no practical effect on the length of defendant's sentence, the trial court erred in failing to arrest judgment as to the robbery with a dangerous weapon charge.

ings." N.C. Gen. Stat. § 15A-1418(b). "If the appellate court does not remand the case for proceedings on the motion, it may determine the motion in conjunction with the appeal and enter its ruling on the motion with its determination of the case." *Id.* We find the evidence before us sufficient to reach the merits of the motion and see no reason to remand the case to the trial court.

In his motion, defendant asserts that he is entitled to a new trial because evidence has come to light, post trial, that demonstrates bias in the testimony of defendant's cell mate, Gene Dickens. At trial, Dickens testified that defendant had bragged to him about how he "clipped a gangster" and how he only spared the life of a dog. After the trial, while Assistant District Attorney William Stevenson was cleaning his office, he discovered two unopened letters that Dickens had written to him. In these letters, Dickens indicates that Stevenson was helping Dickens contact witnesses who had recanted their testimony after Dickens' conviction. Defendant argues that if these letters had been available at trial, they could have been used during cross-examination for impeachment purposes.

A motion for appropriate relief may only be based upon the grounds set forth in N.C. Gen. Stat. § 15A-1415. In pertinent part, this statute provides:

[A] defendant at any time after verdict may by a motion for appropriate relief, raise the ground that evidence is available which was unknown or unavailable to the defendant at the time of trial, which could not with due diligence have been discovered or made available at that time, including recanted testimony, and which has a direct and material bearing upon the defendant's eligibility for the death penalty or the defendant's guilt or innocence.

N.C. Gen. Stat. § 15A-1415(c).

Defendant must establish the following to prevail upon a motion for appropriate relief on the ground of newly discovered evidence: (1) that the witness or witnesses will give newly discovered evidence, (2) that such newly discovered evidence is probably true, (3) that it is competent, material and relevant, (4) that due diligence was used and proper means were employed to procure the testimony at the trial, (5) that the newly discovered evidence is not merely cumulative, (6) that it does not tend only to contradict a former witness or to impeach or discredit him, (7) that it is of such a nature as to show that on another trial a different result will probably be reached and

**STATE v. HALL**

[194 N.C. App. 42 (2008)]

that the right will prevail. *State v. Stukes*, 153 N.C. App. 770, 773, 571 S.E.2d 241, 244 (2002).

Here, the trial transcript reveals that these newly discovered letters are merely cumulative evidence, as defendant introduced other evidence at trial, which tended to demonstrate bias and undermine the credibility of Dickens' testimony:

[Defense Counsel]: I'm going to ask you to take a look at State's Exhibit 267. Have you looked at that before? Do you recognize it?

[Dickens]: Yes.

[Defense Counsel]: It's a letter dated September 14th, 2006?

[Dickens]: Yes.

[Defense Counsel]: Addressed to you, isn't it?

[Dickens]: Yes, sir.

[Defense Counsel]: Is it from Mr. Stevenson seated over there at the prosecutor's table?

* * * *

[Defense Counsel]: Okay. Did you write him a letter that says you need some help from him, and he promised you some help?

[Dickens]: Well, I wrote him a letter telling him, like, when he came, right, to see me, like I explained to him, I didn't want to come and testify. I just told him what I thought.

[Defense Counsel]: Sir, did you write him a letter telling him you wanted help—

[Dickens]: Yes.

* * * *

[Defense Counsel]: Did you write him a letter that says, "You said; you could help me if I was in appeal court on my case. I'm sending a motion to North Carolina Appeal Court now." Do you remember writing him that?

[Dickens]: Right.

* * * *

[Defense Counsel]: Okay. Do you remember writing to Mr. Stevenson, "I know you're all for yourself and your case. I'm willing to help you. I know it's the right thing to do, but I've got to look out for myself here. I hope you will write back or show me something that will help you." Do you remember writing that to him?

[Dickens]: Yes.

In addition to the fact that the newly discovered letters are merely cumulative evidence, they would be introduced for no other reason but to impeach or discredit a witness. Furthermore, given that defendant introduced other evidence tending to undermine the credibility of Gene Dickens' testimony at trial, including evidence that Dickens may have testified against defendant in retaliation, we conclude that it is improbable that these newly discovered letters would cause a jury to reach a different result on another trial. Accordingly, we conclude that this newly discovered evidence does not satisfy the fifth, sixth, or seventh requirements for the discovery of new evidence to warrant the granting of a new trial. *Stukes*, 153 N.C. App. at 773, 571 S.E.2d at 244. As such, defendant's motion for appropriate relief is denied.

## II. Rule of Completeness

[2] We now turn to defendant's appeal. Defendant first contends that Rule 106 of the North Carolina Rules of Evidence required the State to present all of the letters that defendant wrote to Goins, not just the portion of the letters that had been photocopied before the letters were mailed. We disagree.

When part of a written or recorded statement is introduced by a party, Rule 106, known as the "rule of completeness," allows an opposing party to introduce any other part of that statement "at that time . . . which ought in fairness to be considered contemporaneously with it." N.C. Gen. Stat. § 8C-1, Rule 106 (2007). A trial court's decision in determining whether an excluded portion ought to be admitted under Rule 106 will not be reversed on appeal in the absence of a showing of an abuse of discretion. *State v. Thompson*, 332 N.C. 204, 220, 420 S.E.2d 395, 403 (1992).

Under Rule 106, a defendant bears the burden of contemporaneously seeking to introduce the excluded parts of the statement and demonstrating that the excluded parts are either explanatory or relevant. *See State v. Lloyd*, 354 N.C. 76, 96, 552 S.E.2d 596, 612-13 (2001);

*see also Taylor Pipeline Constr. v. Directional Road Boring*, 438 F. Supp. 2d 696, 705 (E.D. Tex. 2006) ("While Hypower objects to Plaintiff's submission of the exhibit bearing bates-stamp PDG/TP 007023 (Exhibit E-29), a portion of an e-mail, as being incomplete, it does not attempt to introduce any missing pages that it asserts the court is required to consider for the sake of fairness. Accordingly, Hypower's objection must fail."); *Thompson*, 332 N.C. at 220, 420 S.E.2d at 404 ("[D]efendant must demonstrate that the tapes and transcripts of the two telephone calls were somehow out of context when they were introduced into evidence, and he must also demonstrate that his Duplin County interview was either explanatory of or relevant to the telephone calls.").

Here, the letters at issue were only copied in part before they were mailed to Goins. As such, defendant argues that he could not make an offer of proof as to the contents of the excluded portions. Accordingly, defendant reasons that all of the letters should have been excluded pursuant to Rule 106. In essence, defendant asks us to adopt a *per se* rule of exclusion in situations where only portions of a written or recorded statement are available. We decline, however, to adopt this rule. First, we find it instructive that our Supreme Court has held that even where portions of a recorded statement are inaudible, a trial court may, in its discretion, admit the audible portions of such statement. *See, e.g. State v. Womble*, 343 N.C. 667, 688-89, 473 S.E.2d 291, 303-04 (1996), *cert. denied*, 519 U.S. 1095, 136 L. Ed. 2d 719, *reh'g denied*, 520 U.S. 1111, 137 L. Ed. 2d 322 (1997). Likewise, federal courts have not interpreted Rule 106 to require exclusion where the government has inadvertently destroyed portions of a statement. *See, e.g., United States v. Codrington*, 2008 U.S. Dist. LEXIS 35859 (E.D.N.Y. May 1, 2008).

Here, there is no evidence that the excluded portions of defendants' letters to Goins have been destroyed. Given that defendant wrote the letters at issue, he was in the best position to know whether the excluded parts of the letters would have been either explanatory or relevant. To the extent that they would have aided in his defense, defendant had a duty to obtain those letters from Goins during discovery and contemporaneously seek to introduce the excluded portions at trial. Therefore, we hold that defendant has failed to show that the trial court abused its discretion under Rule 106 by allowing the State to introduce the photocopied portions of the letters that defendant wrote to Goins while he was awaiting trial.

### III. Motions to Dismiss

Next on appeal, defendant argues that the trial court erred in denying defendant's motions to dismiss the charges of armed robbery, conspiracy to commit armed robbery, and the four counts of first-degree murder. We disagree.

In ruling on a motion to dismiss, the trial judge must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). The Court must find that there is substantial evidence of each element of the crime charged and of defendant's perpetration of such crime. *Id.* "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.*

Whether the evidence presented is direct or circumstantial or both, the test for sufficiency is the same. *State v. Vause*, 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988). If the evidence supports a reasonable inference of defendant's guilt based on the circumstances, then "it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Rowland*, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965).

### A. Robbery with a Dangerous Weapon and Conspiracy

[3] To convict a defendant of the offense of robbery with a dangerous weapon, in violation of N.C. Gen. Stat. § 14-87 (2007), the State must prove three elements: (1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of firearms or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim. *In re Stowe*, 118 N.C. App. 662, 664, 456 S.E.2d 336, 338 (1995).

"Conspiracy . . . is the agreement of two or more persons to do an unlawful act or to do a lawful act by an unlawful means." *State v. Richardson*, 100 N.C. App. 240, 247, 395 S.E.2d 143, 148, *appeal dismissed and disc. review denied*, 327 N.C. 641, 399 S.E.2d 332 (1990) (citation omitted). "The reaching of an agreement is an essential element of conspiracy." *Id.* However, "[i]n order to prove conspiracy, the State need not prove an express agreement; evidence tending to show

a mutual, implied understanding will suffice." *State v. Morgan,* 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991). This evidence may be circumstantial or inferred from the defendant's behavior. *State v. Choppy,* 141 N.C. App. 32, 39, 539 S.E.2d 44, 49 (2000), *appeal dismissed and disc. review denied,* 353 N.C. 384, 547 S.E.2d 817 (2001). Thus, to survive defendant's motion to dismiss with respect to the conspiracy charge required that the State produce substantial evidence, which considered in the light most favorable to the State, would allow a jury to find beyond a reasonable doubt that defendant and Goins had at least an implied understanding that they were going to commit the armed robbery of Billy Collins.

Defendant contends that the State's evidence was insufficient in two respects. First, defendant contends that the State failed to show that defendant committed an unlawful taking of or attempted taking of Collins' personal property because none of Collins' property was recovered from defendant and no witnesses testified that they saw defendant with Collins' property. Second, defendant argues that the State's evidence was insufficient to establish that defendant and Goins agreed to commit the armed robbery of Billy Collins because there were no witnesses who overheard the pair plan to commit the robbery nor did anyone see them commit the crime. We disagree.

Here, the State presented evidence that Collins had $2,000 of cash at his house, which he displayed in front of defendant and Goins on the day that the victims were killed. Auntonius Sims testified that he saw Goins and defendant on 20 August 2003; that the pair was acting suspiciously; that Goins was "shaking out of her mind;" and that defendant admitted to Sims that he and Goins had gone to "get some money, [but] things didn't go right." Leslie Dale testified that on 21 August 2003, defendant and Goins secured a new apartment, paying $560 in cash for the security deposit and prorated rent. On 22 August 2003, payments of $150.27 and $299.32 were made on defendant's past due utility bills. In a letter admitted at trial, defendant wrote to Goins that the two needed to "stick together." Thus, the State's evidence tended to establish that Collins had two thousand dollars in his possession before he was killed; that defendant and Goins were at Collins' home when Collins was last seen alive; that the pair operated with a common plan to "get some money" and needed to "stick together"; that the pair acted suspiciously around the time that Collins was killed; and that on the days immediately following Collins' murder, defendant began spending hundreds of dollars.

While it is true that all of the evidence is circumstantial, this evidence reasonably gives rise to inferences that defendant and Goins (1) acted with a mutual understanding or plan and (2) unlawfully took or attempted to take Collins' personal property. Therefore, there was ample and sufficient evidence to allow the jury to make reasonable inferences of defendant's guilt as to each element of the crimes charged. *See State v. Parker*, 354 N.C. 268, 279, 553 S.E.2d 885, 894 (2001), *cert. denied*, 635 U.S. 1114, 153 L. Ed. 2d 162 (2002) (citations omitted) ("Circumstantial evidence is often made up of independent circumstances that point in the same direction. These independent circumstances are like 'strands in a rope, where no one of them may be sufficient in itself, but all together may be strong enough to prove the guilt of the defendant beyond reasonable doubt. . . . Every individual circumstance must in itself at least *tend* to prove the defendant's guilt before it can be admitted as evidence.' "); *State v. Theer*, 181 N.C. App. 349, 355-57, 639 S.E.2d 655, 660-61, *appeal dismissed*, 361 N.C. 702, 653 S.E.2d 159, *cert. denied*, —— U.S. ——, 653 S.E.2d 159 (2007), *reh'g denied*, —— U.S. ——, 171 L. Ed. 2d 915 (2008) (holding that where the State offered circumstantial evidence of a defendant's extramarital affair, ongoing marital problems, financial status, insurance payout, and suspicious behavior, there was substantial evidence to allow the jury to make reasonable inferences of the defendant's guilt).

### B. First-Degree Murder

[4] First-degree murder is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Taylor*, 337 N.C. 597, 607, 447 S.E.2d 360, 367 (1994), *cert. denied*, 533 S.E.2d 475 (1999). Premeditation means that the act was thought over beforehand for some length of time; however, no particular amount of time is necessary for the mental process of premeditation. *State v. Warren*, 348 N.C. 80, 102, 499 S.E.2d 431, 443, *cert. denied*, 525 U.S. 915, 142 L. Ed. 2d 216 (1998), *cert. denied*, 351 N.C. 369, 543 S.E.2d 145 (2000), *cert. denied*, 359 N.C. 286, 610 S.E.2d 714 (2005). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by legal provocation or lawful or just cause." *Id.* In *Taylor*, our Supreme Court held that want of provocation on the part of the deceased, the conduct of and statements of the defendant before and after the killing, the brutality of the murder, and attempts to cover up involvement in the crime are among other cir-

cumstances from which premeditation and deliberation can be inferred. *Taylor*, 337 N.C. at 607-08, 447 S.E.2d at 367.

The elements necessary to establish first-degree murder under the felony murder rule are (1) that the killing took place (2) while the accused was perpetrating or attempting to perpetrate (3) one of the enumerated felonies, which includes robbery. *State v. Richardson*, 341 N.C. 658, 666, 462 S.E.2d 492, 498 (1995); N.C. Gen. Stat. § 14-17.

Defendant contends that the State's evidence was insufficient to establish that defendant committed first-degree murder because there was no physical evidence to establish that defendant and Goins were at Collins' house at the time that the victims were killed. We disagree. As previously discussed, the State's evidence tended to establish that defendant and Goins were at Collins' home just hours before the victims were killed; that defendant admitted to Auntonius Sims that he and Goins had a common plan to "get some money," but that things had gone badly; that all four victims died from gunshot wounds to the head; and that the pair acted suspiciously around and after the time of the crime. In addition, police recovered a pair of blue jeans containing the blood of one of the victims from the dumpster at defendant's apartment complex, and the State introduced evidence that defendant told two separate witnesses, Corporal Donny Baynard and inmate Gene Dickens, that he had killed four people. Considered together, there was ample and sufficient evidence to allow the jury to make reasonable inferences that defendant intentionally and unlawfully killed the victims with malice and with premeditation and deliberation.

[5] Defendant further contends that the State's evidence was insufficient to establish charges of first-degree murder with respect to Petrie and Sossaman under the felony murder rule because the State's evidence was insufficient to establish the underlying charge of armed robbery. As previously discussed, viewing the State's evidence in the light most favorable to the State, there was substantial evidence to support the underlying charge of armed robbery. Therefore, there was substantial evidence from which the jury could reasonably infer that the killing of Petrie and Sossaman took place while the defendant was perpetrating or attempting to perpetrate the robbery of Billy Collins. The trial court did not err in denying defendant's motions to dismiss these charges.

## IV. Blue Jeans

**[6]** Finally, defendant contends that the trial court erred in allowing the State to admit into evidence the pair of blue jeans that law enforcement recovered from the dumpster in defendant's apartment complex. Specifically, defendant argues that the blue jeans should have been excluded under Rules 401, 402, and 403 of the North Carolina Rules of Evidence because the State did not prove that the pair of blue jeans was sufficiently connected to defendant. We disagree.

A trial court's decision with regard to the admission of evidence will only be reversed upon a showing of an abuse of discretion. *State v. McCree*, 160 N.C. App. 19, 28, 584 S.E.2d 348, 354, *appeal dismissed and disc. review denied*, 357 N.C. 661, 590 S.E.2d 855 (2003). Defendant must show that the ruling was "manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Brown*, 350 N.C. 193, 209, 513 S.E.2d 57, 67 (1999).

In *State v. Bundridge*, 294 N.C. 45, 57-59, 239 S.E.2d 811, 820-21 (1978), our Supreme Court addressed an argument similar to the one advanced by defendant. In *Bundridge*, the defendant argued that bloodstained clothing that had been collected from the defendant's residence was of no probative value because the State had failed to show that the defendant had worn the clothes on the night of the alleged crime or that the stains on the clothes were from the blood of the victim. *Id.* at 58, 239 S.E.2d at 820. Our Supreme Court rejected that argument and held the fact that there was no direct evidence showing that the defendant had in fact worn the clothing during the assault went to the weight of the evidence rather than its admissibility. *Id.* at 58-59, 239 S.E.2d at 820. The Supreme Court in *Bundridge* explained:

> [I]n a criminal case, any evidence which sheds light upon the supposed crime is admissible. Evidence meets the test of relevancy if it has any logical tendency, however slight, to prove a fact in issue.

*Id.* at 58, 239 S.E.2d at 820 (citations omitted).

Here, the blue jeans were stained with the blood of one of the murdered victims, they were recovered from a dumpster at defendant's apartment complex, and defendant was seen walking in the direction of that dumpster. These facts create links in a chain of circumstances which would permit, but not require, a jury to infer that

defendant was involved in the murder. We hold that the fact that there is no direct evidence showing that defendant wore the clothing during the murders goes to the weight of the evidence rather than its admissibility. As such, the trial court did not abuse its discretion in allowing the State to admit this evidence at trial.

For the foregoing reasons, we find no error in defendant's convictions, but we arrest judgment with respect to the robbery with a dangerous weapon charge.

As to 03 CRS 18275, robbery with a dangerous weapon: Judgment arrested.

As to 03 CRS 19233, 03 CRS 62555, 03 CRS 62556, 03 CRS 62558, 03 CRS 62559: No error.

Judges McGEE and STROUD concur.